UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
:
DERICK LOUIS WILLIAMS,                                    :
                                                          :
                                    Plaintiff,            :
                                                          :      17-CV-8940 (VSB)
             - against -                                  :
                                                          :      **OPINION & ORDER**
                                                          :
KENNETH W. RICHARDSON,                                    :
                                                          :
                                    Defendant.            :
                                                          :
-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/2/2019

Appearances:

Alexander Setzepfandt
David A. Luttinger, Jr
Sarah Mac Dougall
Covington & Burling LLP
New York, NY
*Counsel for Plaintiff*

Kenneth Warren Richardson
Law Offices of Kenneth W. Richardson
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

Before me is Plaintiff's motion for a legal ruling on the issue of appellate causation. (Doc. 52.) Plaintiff requests that I rule "as a matter of law—and instruct the jury at trial—that had [Defendant Kenneth W.] Richardson properly filed an appellate brief on [his] behalf, the Second Circuit would have reversed the district court's order of dismissal." (Doc. 53 at 6.) Because I find that the Second Circuit would have deemed Plaintiff's right to appeal waived, and, in any event, would have affirmed the dismissal of Plaintiff's complaint, Plaintiff's motion is DENIED.

I. **Background**[1]

In this legal malpractice case Plaintiff alleges that Defendant negligently handled his employment discrimination case, *Williams v. Metro North Railroad et al.*, Case No. 16-CV-1141 (LAK-JCF) (hereinafter the "Underlying Proceeding"). The basis for Plaintiff's allegation of malpractice is Defendant's failure to timely file an appeal of Judge Lewis A. Kaplan's dismissal of the Underlying Proceeding. Plaintiff asserts that he is entitled to damages because Defendant's malpractice prevented him from recovering in the Underlying Proceeding.

A. *The Underlying Proceeding*

On February 9, 2016, Plaintiff, filed a complaint ("Underlying Complaint") in this district alleging that Metro-North Railroad ("Metro-North") and certain Metro-North employee-supervisors violated Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL").[2] Plaintiff filed the Underlying Complaint pro se and was granted leave to proceed *in forma pauperis*. (*See* UP Doc. 3.)[3]

During 2015 and 2016, Plaintiff worked as a Coach Cleaner for Metro-North. (UC at 24.)[4] On December 16, 2015, Metro-North sent Plaintiff a disciplinary charging document charging Plaintiff with two instances of insubordination and conduct unbecoming of a Metro-

---

[1] The facts described in this opinion are derived from the complaint in Plaintiff's prior proceeding, *Williams v. Metro North Railroad et al.*, Case No. 16-CV-1141 (LAK-JCF), ECF No. 2, as well as the complaint filed in the instant case, (Doc. 2). In addition, I consider ECF Docket Number 15 filed the Underlying Proceeding, which provides supplemental materials submitted by Plaintiff in the Underlying Proceeding. I take judicial notice of the docket entries, court transcripts, and judicial opinions in the Underlying Proceeding for purposes of this opinion only. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (stating that "docket sheets are public records of which the court could take judicial notice"). My references to the allegations in the instant case and the Underlying Proceeding should not be construed as a finding as to their veracity, and I make no such findings.

[2] In the Underlying Proceeding, Plaintiff also brought claims alleging retaliation and defamation. However, in the instant case Plaintiff only alleges malpractice based on Defendant's negligent handling of his prior discrimination claims. Accordingly, I do not address the retaliation and defamation claims in this opinion.

[3] "UP" refers to the docket of the Underlying Proceeding.

[4] "UC" refers to the Underlying Complaint. (UP Doc. 2.) Page number citations to the Underlying Complaint refer to the ECF heading page numbers in the Underlying Complaint.

2

North employee. (*Id.* at 14.) Specifically, on November 25, 2015, Plaintiff stopped his work to confront his supervisor, foreman Trevor Havard,[5] and addressed him "in an aggressive and hostile manner." (*Id.*) The disciplinary charging document also stated that on December 4, 2015, Plaintiff refused to acknowledge instructions from his supervisor and communicated in a "tone and manner [that] was perceived . . . as inappropriate, hostile and unprofessional" by Havard and two other foremen, Allen Rossney and Kevin Roger. (*Id.*) Citing these two instances of misconduct, Metro-North scheduled a hearing in accordance with Plaintiff's collective bargaining agreement to determine whether Plaintiff should be disciplined for his conduct. (*Id.*)

In response to the allegations in the disciplinary charging document related to the first incident on November 25, 2015, Plaintiff claimed that he "was just talking" and "respect[ed] everyone at all times." (*Id.* at 22.) Plaintiff also claimed that the incident "[was] nothing but more retaliation from Allen Rossney/Trevor [Havard] for trying to make [him] falsif[y] [his] safety report . . . ." (*Id.*)[6] With respect to the second incident on December 4, 2015, Plaintiff claimed that his supervisor "tried to bait [him] into an argument in front of [the] other foremen." (*Id.* at 27.) In addition, Plaintiff claimed that unspecified individuals at Metro-North stated he had "angry black man syndrome," a comment that had "been going around North White Plains yard for some time[.]" (*Id.* at 28.) Plaintiff also stated that "a co-worker of [his] said it before,

---

[5] The Underlying Complaint names as a defendant Trevor Havard, (UC, at 1), as does the docket in the Underlying Proceeding, but certain documents appended to the Underlying Complaint refer to this defendant as Trevor Harvard. (*See, e.g.*, UC at 11–12, 24–25.) For purposes of this opinion I use Trevor Havard.

[6] The Underlying Complaint describes two instances—one in May and the other in June of 2015—during which Plaintiff was asked by his supervisor, Foreman Trevor Havard, to "falsify[] company records" by documenting that Plaintiff had serviced certain train bathrooms in the Metro-North yard when in fact he had not. (UC, at 24–26.) Plaintiff's complaint included two documents demonstrating that Plaintiff protested his foreman's conduct with his union, the Local 2001 of the Transport Workers Union of America, Railroad Division. (*Id.*) These allegations served as the basis of Plaintiff's retaliation claim in the Underlying Proceeding.

3

and nothing was said to him by foreman Trevor [Havard]," and further claimed that the co-worker was "one of Trevor['s] boys." (*Id.*)

The Underlying Complaint included as attachments several letters from John R. Feltz, the President of the Transport Workers Union of America Local 2001, Plaintiff's union. (*See generally id*. at 9-12, 24-26.) In one such letter, Feltz explained that in attempting to resolve the incidents of insubordination described above, Plaintiff was offered a fifteen-day suspension, which consisted of five days without pay and ten days deferred. (*Id*. at 11-12.) The letter also asserted that the offer "once again illustrate[d] Metro North's . . . discrimination based on Mr. Williams' race and color . . . ." (*Id.* at 12.) A disciplinary hearing was held on January 26, 2016, at which Trevor Havard and Kevin Roger testified, and Plaintiff was assessed a ten (10) day actual and twenty (20) day deferred suspension for the charged misconduct. (*See* UP Doc. 15, at 2–3).

The Underlying Complaint was filed on February 9, 2016,[7] and named Metro-North, Allen Rossney, Kevin Roger, and Trevor Havard as defendants. (UC, at 1.) In addition to the allegations recited above, the Underlying Complaint included the following additional assertions relevant to Plaintiff's discrimination claim:

- "[B]ecause of my race and color I cannot ask foremen Trevor a question without it becoming a problem this goes on with these individuals." (*Id.* at 3.)

- "I have been discriminated against by management at North White Plains yard. By Allen Rossney[,] Kevin Roger[, and] Trevor Harvard[.] [B]ecause of my race and color I cannot ask a white foreman a questions [sic] without it becoming a problem this goes on with these individuals." (*Id.* at 6.)

---

[7] Plaintiff also filed a complaint with the New York State Division of Human Rights, charging Metro-North with unlawful discrimination on the basis of race and color. (UP Doc. 21, at 2.) This complaint was dismissed on grounds of administrative convenience given Plaintiff's intent to pursue federal claims in federal court. (*Id.*) Plaintiff also filed a complaint with the United States Equal Employment Opportunity Commission on January 27, 2016, (UC, at 5), which gave him leave to proceed in federal court, (UP Doc. 29, at 2).

4

Metro-North was served on April 6, 2016, (UP Doc. 11), after the court entered an order of service through the United States Marshals Service. However, service on the individual defendants was returned unexecuted. (UP Docs. 12, 13, 14.) Judge Kaplan referred the case to Magistrate Judge James C. Francis IV for general pretrial and a report and recommendation on a dispositive motion, (UP Doc. 8), and on June 9, 2016, Metro-North filed a motion to dismiss the complaint. (UP Docs. 16.) In its motion, Metro-North argued that Plaintiff's discrimination claims failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*See id*.) On June 29, 2016, Plaintiff filed a letter opposing certain arguments made by Metro-North, but did not substantively oppose Metro-North's Rule 12(b)(6) argument. (S*ee* UP Doc. 21.) Metro-North Railroad filed a reply brief on July 14, 2016, noting that Plaintiff failed to address its argument. (*See* UP Doc. 24, at 3–4.)

On August 17, 2016, Magistrate Judge Francis issued a Report and Recommendation recommending dismissal of Plaintiff's discrimination claims with leave to file an amended complaint. (UP Doc. 26.) Magistrate Judge Francis's opinion concluded that Plaintiff's complaint failed to adequately allege circumstances giving rise to an inference of discriminatory intent. (*Id.* at 9.) In particular, Magistrate Judge Francis stated the following:

> It is well-settled that an inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to: ["]. . . the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the [adverse employment action].["] *Leibowitz v. Cornell University*, 584 F.3d 487, 502 (2d Cir. 2009) (quoting *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)).

> No such circumstances have been alleged here. Mr. Williams asserts only that "I cannot ask a white foreman a question[] without it becoming a problem . . . ." (Complaint at 6). Even given the liberal reading afforded to pro se pleadings, this allegation is too conclusory to support a claim of discrimination. The plaintiff provides no facts that would permit a comparison of his treatment with that of white

5

> employees, nor does he suggest that he is treated more respectfully by black supervisors. *See Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (per curiam) ("Plaintiff's Complaint does not . . . set forth any factual circumstances from which a gender-based motivation for such an [adverse] action might be inferred. It does not, for instance, allege that Clark (or any of the other defendants) made any remarks that could be viewed as reflecting discriminatory animus. Nor does it allege that any male employees were given preferential treatment when compared to Plaintiff." (citations and footnotes omitted)); *Sales v. Clark*, No. 14 Civ. 8091, 2015 WL 7731441, at *5 (S.D.N.Y. Sept. 16, 2016). Accordingly, the plaintiff's discrimination claims should be dismissed.

(*Id.* at 9–10.) In addition, the Report and Recommendation stated that "[p]ursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of this order to file written objections," and further stated that "[f]ailure to file timely objections will preclude appellate review."[8] (*Id.* at 14.)

After the Report and Recommendation was filed, Plaintiff submitted two letters; however, neither letter contained specific objections to Magistrate Judge Francis's opinion and the letters merely attempted to supplement the factual record. (*See* UP Docs. 29, 30.) Additionally, the second letter was not filed in a timely manner. Nevertheless, on September 26, 2016, Judge Kaplan issued an order assuming that Plaintiff's letters constituted objections to the Report and Recommendation, but overruling the objections. (UP Doc. 31.) In the order, Judge Kaplan adopted the reasoning in the Report and Recommendation and granted Plaintiff leave to file an amended complaint against Metro-North by October 12, 2016. (*Id.*) After noting that the docket disclosed no proof of service of the Underlying Complaint on the individual defendants— Allen Rossney, Kevin Roger, and Trevor Havard—Judge Kaplan granted Plaintiff leave to file proof of service on these defendants and notified Plaintiff that failure to do so would risk dismissal under Federal Rule of Civil Procedure 4(m). (*Id.*) After Plaintiff failed to amend the

---

[8] The docket entry associated with Magistrate Judge Francis's Report and Recommendation set a due date to file objections on September 5, 2016 in accordance with the time allowed under Federal Rules of Civil Procedure 72 and 6(d). (UP Doc. 26.)

6

complaint or file proof of service on the individual defendants, on November 14, 2016, Judge Kaplan issued a second order dismissing with prejudice Plaintiff's discrimination claims against Metro-North, and dismissing without prejudice the claims against the individual defendants. (UP Doc. 34.) Accordingly, the Clerk of Court entered judgment against Plaintiff and closed the case. (UP Doc. 35.)

On December 13, 2016, Defendant Kenneth Richardson filed a notice of appearance in the Underlying Proceeding on behalf of Plaintiff, (UP Doc. 36), and filed a notice of appeal of the dismissal of Plaintiff's complaint on December 14, 2016, (UP Doc. 38). On December 15, 2016, the Second Circuit Court of Appeals issued a Docketing Notice assigning the appeal ("Underlying Appeal") Docket Number 16-4178. (UA Doc. 1.)[9] Although the Clerk of Court for the Second Circuit issued an order requiring Plaintiff to file an appellate brief on or before March 13, 2017, (UA Doc. 32), Defendant failed to timely file the brief. Accordingly, the Second Circuit issued a mandate on April 4, 2017, dismissing Plaintiff's appeal. (UA Doc. 43; UP Doc. 39.) On April 19, 2017, the Second Circuit denied Defendant's motion to recall the mandate and reinstate Plaintiff's appeal, thus ending the case. (UA Doc. 66.)

### B. *Procedural History of the Instant Case*

Plaintiff filed the complaint in this action on November 15, 2017, alleging legal malpractice under New York state law for his lawyer's failure to timely file an appellate brief in the Underlying Appeal. (Doc. 2.) I granted Plaintiff's application to proceed in forma pauperis on December 19, 2017, (Doc. 5), and Plaintiff initially proceeded in this case pro se. Defendant answered the complaint on February 16, 2018, denying all allegations in the complaint, but admitting that he did in fact miss the deadline for filing the brief in the Underlying Appeal.

---

[9] "UA" refers to the docket in the underlying appeal, *Williams v. Metro North Railroad*, Appeal No. 16-4178.

7

(Doc. 11 at 1.)

On February 1, 2019, I entered an order granting Plaintiff pro bono counsel for the limited purpose of settlement. (Doc. 38.) After pro bono counsel filed notices of appearance in this case, (Doc. 36), the parties attempted to settle this matter with the assistance of Magistrate Judge Debra Freeman, but were unable to come to an agreement, (*see* Doc. 37). I then entered an order granting Plaintiff pro bono counsel for the purposes of trial, (Doc. 38), and new pro bono counsel filed notices of appearance on July 26, 2019, (Docs. 40, 41, 42.) After a status conference with the parties on August 30, 2019, I directed Plaintiff to file his motion on appellate causation by September 27, 2019, (Doc. 47), and it was so filed along with a supporting declaration, (Docs. 52, 53, 54). Defendant filed a memorandum of law in opposition to Plaintiff's motion on October 25, 2019, (Doc. 55), to which Plaintiff replied on November 8, 2019, (Doc. 58).

## II. Legal Standards

Plaintiff's asks me to rule "as a matter of law—and instruct the jury at trial—that had [Defendant Kenneth W.] Richardson properly filed an appellate brief on [his] behalf, the Second Circuit would have reversed the district court's order of dismissal." (Doc. 53 at 6.) Because I find that the Second Circuit would have deemed Plaintiff's right to appeal waived, and, in any event, would have affirmed the dismissal of Plaintiff's complaint, I conclude that Defendant's failure to timely file the Underlying Appeal did not affect the outcome of the Underlying Proceeding.

### A. *Appellate Causation in Legal Malpractice Cases*

"[A] [l]egal malpractice action[] [is] often described as a 'lawsuit within a lawsuit.'" *Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 119 (2d Cir. 2002) (quoting *Katsaris v. Scelsi*, 453 N.Y.S.2d 994, 996 (Sup. Ct. 1982)). "Where malpractice is shown to have affected [a]

8

proceeding[], the inquiry shifts to what would have happened if the claim had been decided in the absence of malpractice." *Id.* This is because, "[i]n order to prevail on a claim of legal malpractice under New York law, a plaintiff must demonstrate (1) a duty, (2) a breach of the duty, and (3) proof that actual damages were proximately caused by the breach of the duty." *Tinelli v. Redl*, 199 F.3d 603, 606 (2d Cir. 1999) (internal quotations and citation omitted).

Where a plaintiff alleges legal malpractice based on a lawyer's failure to timely file an appeal, the malpractice is not "the proximate cause of [the plaintiff's] damages" unless, "but for [the attorney's] failure to [timely file the appeal], the [Appeals Court] would have reversed" the decision of the district court. *Ocean Ships, Inc.*, 315 F.3d at 117 (applying this standard in a malpractice case involving a lawyer's failure to perfect an appeal); *see also Perkins v. Am. Transit Ins. Co.*, No. 10 Civ. 5655 CM, 2013 WL 174426, at *20 (S.D.N.Y. Jan. 15, 2013) (same). "[W]hether a plaintiff would have prevailed on appeal should be decided as a matter of law." *Tinelli*, 199 F.3d at 606. Accordingly, "the task of deciding how an appeal would have been resolved must be left to the judge and not the jury." *Id.* at 607. A plaintiff need not establish certain success on the theoretical appeal. *See Ocean Ships, Inc.*, 315 F.3d at 118. Instead, the court must "determine what the appellate court would have done using the same standards that the appellate court would have applied." *Id.* (internal quotations and citation omitted).

Plaintiff's instant motion challenges only Judge Kaplan's ruling dismissing Plaintiff's prior employment discrimination claims under Federal Rule of Civil Procedure 12(b)(6). The Second Circuit reviews *de novo* such a dismissal. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016). Accordingly, I consider the pleading standards applicable in a Title VII

9

employment discrimination case.[10] I also consider the Second Circuit's prudential waiver doctrine applicable when a Plaintiff fails to sufficiently object to a Magistrate Judge's report and recommendation.

### B. *Pleading Standards Under Title VII*

The Second Circuit provided detailed guidance regarding the pleading standards applicable in a Title VII employment discrimination case in *Vega v. Hempstead Union Free School District*, 801 F.3d 72 (2d Cir. 2015). In *Vega* the Court held that in order to survive a motion to dismiss, "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision."[11] *Id*. at 86. A plaintiff in a Title VII discrimination case need not allege "but-for" causation. *Id.* at 86.

A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* (internal quotation marks omitted). Recognizing this standard, "[c]ourts must remember that the plausibility standard is not akin to a probability requirement." *Vega*, 801 F.3d at 87 (internal quotation marks omitted). "On

---

[10] Although Plaintiff's original suit asserted claims of Title VII employment discrimination and New York State Human Rights Law claims, the Second Circuit "typically treat[s] Title VII and NYSHRL discrimination claims as analytically identical, applying the same standard of proof to both claims." *Salamon v. Our Lady of Victory Hosp.*, No. 06-1707-cv, 2008 WL 2609712, at *12 (2d Cir. Jan. 16, 2008). Therefore, in this opinion I consider only the viability of Plaintiff's Title VII claim.

[11] Plaintiff's opening brief asks me to apply the *Conley v. Gibson*, 355 U.S. 41 (1957), "no set of facts" pleading standard, (Doc. 53 at 10–11); however, the Second Circuit has "made clear that *Iqbal* applies to employment discrimination cases," and that "[i]n *Iqbal* . . . the Court abandoned *Conley*'s 'no set of facts' test and adopted instead a plausibility standard of pleading." *Vega*, 801 F.3d at 83–85. Under *Ashcroft v. Iqbal*, 556 U.S. 662, (2009), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

a motion to dismiss, the question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to nudge their claims across the line from conceivable to plausible." *Id.* (same).

In the employment discrimination context, "[a] plaintiff need only give plausible support to a minimal inference of discriminatory motivation." *Id.* at 84 (same). In light of this standard, "the court must be mindful of the 'elusive' nature of intentional discrimination." *Id.* at 86. Because of the inherently elusive nature of intentional discrimination, a plaintiff must typically "rely on 'bits and pieces' of information to support an inference of discrimination, *i.e.*, a 'mosaic' of intentional discrimination." *Id.* at 86. Accordingly, the Second Circuit has stated that "[a]n inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint[12] and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). Although all allegations contained in the complaint are assumed to be true, this principle is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

---

[12] A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

11

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."[13] *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory allegations. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). In other words, "the duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

### C. *Waiver of Appellate Review*

Federal Rule of Civil Procedure 72(b) states that "[w]ithin 14 days after being served with a copy of [a Magistrate Judge's] recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. Rule 72(b). "As a general matter, '[w]here parties receive clear notice of the consequences, failure to timely object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision.'" *Matos v. Comm'r of Soc. Sec.*, 618 F. App'x 14, 14–15 (2d Cir. 2015) (quoting *Smith v. Campbell*, 782 F.3d 93, 102 (2d Cir. 2015)). "'A *pro se* party's failure to object,' however, 'does not operate as a waiver . . . unless the magistrate's report explicitly states that failure to do so . . . will preclude appellate review and specifically

---

[13] Plaintiff is currently represented by counsel in the instant malpractice suit, but proceeded pro se in the Underlying Proceeding until his complaint was dismissed.

cites 28 U.S.C. § 636(b)(1) and rules 72, 6(a) and 6[(d)] of the Federal Rules of Civil Procedure.'" *Id*. (quoting *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992). Similarly, when a party fails to assert specific objections to a report and recommendation and merely files general objections, such objections are "inadequate to preserve a challenge to the district court's order granting [a defendant's] motion to dismiss." *Benitez v. Parmer*, 654 F. App'x 502, 504 (2d Cir. 2016) (citing *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under [] Fed. R. Civ. P. 72(b) . . . ."); *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)). This waiver doctrine is nonjurisdictional and therefore may be excused in the interests of justice. *Benitez*, 654 F. App'x at 504; *Roldan*, 984 F.2d at 89; *accord In re Warburgh*, 644 F.3d 173, 178 (2d Cir. 2011). Additionally, "[w]here a district court conducts de novo review of an issue that was not raised in objection to [a] magistrate's report, [the] court may disregard the waiver and reach the merits." *Mario*, 313 F.3d at 766.

### III. Discussion

#### A. *Waiver of Appellate Review*

Magistrate Judge Francis's Report and Recommendation unambiguously provided the requisite notice to Plaintiff advising that failure to timely file objections to the report would "preclude appellate review." (UP Doc. 26, at 14.) Although Plaintiff filed his first letter within the time prescribed for objections, that letter did not set out any objections to the Report and Recommendation. Instead, Plaintiff's letter included an Equal Employment Opportunity Commission notice of Plaintiff's right to sue. (UP Doc. 29.) Plaintiff's second untimely letter also did not include specific objections to the Report and Recommendation as required by Rule 72(b). Accordingly, Plaintiff waived appellate review of the dismissal of his complaint by

13

failing to comply with the Magistrate Judge's instructions, the Federal Rules of Civil Procedure, 28 U.S.C. § 636(b)(1), and Second Circuit precedent.

Because waiver in this instance is nonjurisdicitonal, I consider whether the interests of justice counsel against applying the doctrine. I conclude that a finding of waiver is appropriate here given my agreement with Judge Kaplan's order dismissing Plaintiff's discrimination claim under Rule 12(b)(6). In addition, waiver is even more appropriate because Judge Kaplan granted Plaintiff leave to amend the Underlying Complaint after the initial dismissal, (s*ee* UP Doc. 31), which Plaintiff ignored. However, even if waiver were inappropriate, I agree with the decision Judge Kaplan rendered on the merits ordering the dismissal of Plaintiff's discrimination claim.

### B. *Plaintiff's Title VII Claim*

Plaintiff's Underlying Complaint adequately alleges that he suffered an adverse employment decision in the form of a suspension, but fails to "give plausible support to a minimal inference of discriminatory motivation" on the part of Metro-North, and was thus properly dismissed. *Vega*, 801 F.3d at 84 (internal quotations omitted). The "bits and pieces," (*Id.*), of information Plaintiff relies on to support an inference of intentional discrimination on the basis of race and color include the following: (i) Plaintiff's allegation that "because of [his] race and color [he] cannot ask a white forem[a]n a question[] without it becoming a problem," and the allegation that "this goes on with these individuals," (UC, at 3, 6); (ii) Plaintiff's allegation that individuals at Metro-North stated he had "angry black man syndrome," a comment that had "been going around North White Plains yard for some time"; (iii) Plaintiff's allegation that "a co-worker of [his] said [he had angry black man syndrome] before, and nothing was said to him by foreman Trevor [Havard]," (*Id.* at 28); and (iv) the letter from John R. Feltz stating that the Metro-North Railroad's actions in seeking a suspension "once again illustrate[d] Metro North's . . . discrimination based on Mr. Williams' race and color," (*Id.* at 12).

14

As an initial matter, allegations (i) and (iv) above are (1) stated in conclusory terms, (2) devoid of factual details concerning the alleged discrimination, and (3) merely assert that Plaintiff faces discrimination due to his race and color. Such conclusory allegations do not adequately "plead[] factual content," but instead provide mere "labels and conclusions." *Ashcroft*, 556 U.S. at 678. In any case, the factual assertion that Plaintiff could not "ask a white forem[a]n a question[] without it becoming a problem," (UC at 3, 6), does not sufficiently support the inference that Plaintiff was being singled out because of his race or color. Plaintiff's Underlying Complaint does not contextualize this allegation with, for example, factual content revealing that the white foremen at Metro-North Railroad singled out "others in the employee's protected group," or gave "more favorable treatment [to] employees not in [Plaintiff's] protected group." *Littlejohn*, 795 F.3d at 312.

Allegations (ii) and (iii) similarly fail to plausibly support an inference of discriminatory motivation on the part of Metro-North. Although "[c]omments reflective of racial bias—particularly when uttered by a supervisor with significant responsibility for hiring and firing—can supply substantial evidence of discriminatory intent," *Philip v. Gtech Corp.*, No. 14 Civ. 9261 (PAE), 2016 WL 3959729, at *13 (S.D.N.Y. July 20, 2016), Plaintiff's allegations fail to connect his co-workers' comments that he had "angry black man syndrome" to the Plaintiff's suspension. First, Plaintiff does not allege which particular co-workers made the racially charged statements; however, based upon Plaintiff's complaint there is nothing that indicates supervisors made the statements. Second, Plaintiff does not allege when exactly these statements were made, if they were related to the two incidents that led to his temporary suspension, and, if so, how they were related to the incidents leading up to Plaintiff's temporary suspension. *See Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) ("[T]he more remote

15

and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination. For example, remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark."), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009); *cf. Tolbert v. Smith*, 790 F.3d 427, 437 (2d Cir. 2015) (concluding that a school principal's asking a culinary arts teacher "[d]o you only know how to cook black, or can you cook American too?" supported an inference of discriminatory motivation when the principal himself denied the teacher tenure a few months later). Even if Plaintiff's allegation that "a co-worker of [his] said [he had angry black man syndrome] [], and nothing was said to him by foreman Trevor [Havard]," (UC at 28), is construed to mean that Trevor Havard actually heard the comment, this allegation is insufficient to plausibly support the conclusion that Metro-North's ultimate decision to issue a suspension against Plaintiff was based in part on a discriminatory motive.[14]

Accordingly, because the allegations in the Underlying Complaint fail to plausibly support an inference of discrimination, Plaintiff's Title VII claim is insufficient to survive a motion to dismiss.

IV. **Conclusion**

Because I find that the Second Circuit would have deemed Plaintiff's right to appeal

---

[14] Although Plaintiff's complaint does not clearly describe how Metro-North made the ultimate decision to suspend him, the documents on the docket indicate that Plaintiff's trial was administered by a hearing officer, Daniel Knauth. (UP Doc. 15 at 2.) The documents further indicate that in addition to Trevor Havard, five other witnesses testified at Plaintiff's trial. (*Id.* at 6–8.) Plaintiff does not allege that Trevor Havard himself made the decision to suspend Plaintiff, although the documents do indicate that Trevor Havard "was the party that instituted the charges against Mr. Williams." (UC at 11.) However, I do not construe this allegation to mean that Havard made the decision to suspend Plaintiff.

waived, and, in any event, would have affirmed the dismissal of Plaintiff's complaint, I conclude that Defendant's failure to timely file the Underlying Appeal did not affect the outcome of the Underlying Proceeding. Accordingly, it is hereby:

ORDERED that Plaintiff's legal malpractice claim fails as a matter of law, and cannot proceed to trial.

IT IS FURTHER ORDERED that the Jury Trial set for December 10, 2019 at 10:00 a.m. is adjourned *sine die* due to the scheduling conflict discussed at the August 30, 2019 status conference. (*See* Doc. 50, at 10).

IT IS FURTHER ORDERED that, at the Final Pretrial Conference set for December 4, 2019 at 12:30, the parties should be prepared to discuss Plaintiff's representation in the Proposed Pretrial Order that "[h]ad Defendant correctly advised Plaintiff that even after his appeal was dismissed, he still had the ability to file claims against the individual defendants in state court, he would have done so and recovered on his claims against them." (Doc. 59, at 6.) Specifically, the parties should be prepared to discuss why I have jurisdiction over such a claim, and if so, why the claim should be allowed to proceed to trial in light of its absence from the complaint in this action.

The Clerk is respectfully directed to terminate the open motion at Document 52.

SO ORDERED.

Dated: December 2, 2019
    New York, New York

Vernon S. Broderick
United States District Judge